UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
July 15, 2022
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Cox Oil Offshore, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-21-2890 |
| | § | |
| DCP Mobile Bay Processing, LLC, | § | |
| | § | |
| Defendant. | § | |

## Opinion Denying Reconsideration

1. *Background.*

   In May 2011, Union Oil Company of California (Chevron) and DCP Mobile Bay Processing, LLC, entered into a Plant Bypass Agreement for so long as any of the Transportation Agreements between Chevron and Dauphin Island Gathering Partners (DIGP) are effective. Chevron transported gas through the Dauphin Island Partners pipeline to DCP's processing facility, where DCP processed gas produced from its wells.

   In 2016, Cox Oil Offshore, LLC, acquired some of Chevron's offshore assets, and Chevron assigned its rights under the Bypass Agreement and Transportation Agreements to Cox.

   In January 2021, DCP told Cox that the Bypass Agreement would expire and presented a Gas Processing Contract to govern deliveries of gas by Cox starting in February 2021. Cox formally rejected the Gas Processing Contract and termination notice for the Bypass Agreement. DCP charged Cox for processing fees under the Processing Contract, and, in August 2021, it notified Cox that the Gas Purchase Contract would govern deliveries of gas by Cox starting in September 2021.

   On September 2, 2021, Cox sued DCP for: (a) declaratory judgment; (b) breach of contract; (c) tortious interference with business and contractual relations under Alabama law; (d) violation of Section 2 of the Sherman Act; (e) violation of Ala. Code § 6-5-60; (f) a temporary restraining order, temporary injunction, or permanent injunction; and (g) immediate cash deposit.

This court issued a preliminary injunction on September 13, 2021 and an order clarifying that injunction seven days later. On September 21, 2021, DCP asked this court to reconsider the preliminary injunction. The status quo will be preserved.

2. *The Contracts.*

   A. *Bypass Agreement.*

The Bypass Agreement states that DCP has the exclusive right to process all gas delivered to it under the Transportation Agreements. Under this agreement, DCP will not charge Cox a bypass fee for each one million British thermal unit of gas delivered to and measured by it at the plant.

   B. *Gas Processing Contract.*

Under the Gas Processing Contract, DCP will charge Cox $1.07 per one thousand cubic feet of gas delivered to the plant. The contract also states that DCP has the sole authority to purchase and market Cox's gas transported to and processed at the plant.

DCP delivered this contract to Cox with a cover letter stating that, if Cox continued to deliver its gas to DCP in the absence of an executed agreement, Cox accepted the terms of the contract on a day-to-day basis. The cover letter was not incorporated into the contract.

   C. *Gas Purchase Contract.*

The Gas Purchase Contract states that Cox will sell and deliver to DCP all gas produced at its wells. Under the contract, DCP must pay Cox 65% of the net value attributable to its gas less fees and retain 35% for itself.

DCP delivered this contract to Cox with a cover letter stating that, if Cox continued to deliver its gas to DCP in the absence of an executed agreement, Cox accepted the terms of the contract on a day-to-day basis. The cover letter was not incorporated into the contract.

   D. *Transportation Agreements.*

The Transportation Agreements are the agreements between Cox and DIGP for transporting its gas from the wells to DCP's processing facility.

3. *Preliminary Injunction.*

For a preliminary injunction, Cox must show: (a) a substantial likelihood of success on the merits; (b) a substantial threat of irreparable harm if the injunction is denied; (c) that the threatened injury if the injunction is denied outweighs harm that might result if the injunction is granted; and (d) that the grant of an injunction is in the public's interest.[1]

A. *Likelihood of Success.*

1. *Declaratory Judgment.*

To succeed on its claim for declaratory judgment, Cox must show that a substantial controversy exists between it and DCP of sufficient immediacy and reality to warrant a declaratory judgment.[2]

Cox says that it and DCP dispute whether: (a) the Bypass Agreement and the Transportation Agreement remain in full force and effect, (b) DCP may charge Cox for fees in excess of those allowed under the Bypass Agreement, and (c) Cox is bound by the Replacement Contract or the Purchase Contract. It claims that the Bypass Agreement and the Transportation Agreement are effective. It says that DCP may not charge Cox fees in excess of that agreement, and it is not bound by the two later contracts.

DCP says that Cox is bound by the Purchase Contract because Cox knew or should have known that, by not executing the contract and continuing to deliver gas, it agreed to the terms on a day-to-day basis.

No signed Bypass Agreement exists between DCP and Cox or Chevron. However, it is likely that acceptance by silence applies.[3] For ten years, the parties operated under the Bypass Agreement. Cox explicitly rejected the Replacement Contract and the Purchase Contract. If Cox did not intend to accept the Bypass Agreement, its behavior suggests it would have explicitly rejected the contract. The additional term for acceptance was in a cover letter and contradicts the

---

[1] *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

[2] *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989).

[3] Restatement (Second) of Contracts § 69 (Am. L. Inst. 1981).

termination provision of the agreement. Under that analysis, Cox will likely succeed on the merits of its declaratory judgment claim.

2. *Breach of Contract.*

To succeed on its breach of contract claim, Cox must show that: (a) a valid contract exists, (b) Cox performed under the contract, (c) DCP breached the contract by failing to perform under its terms, and (d) Cox was damaged as a result of DCP's breach.[4]

Cox says that the Bypass Agreement remains in effect and that DCP breached it by charging higher processing fees under the Replacement Contract. It also claims that DCP breached the contract when it deprived Cox's right to market its gas to third parties and proposed a materially lower purchase price for that gas.

DCP claims that the Bypass Agreement is not effective because Cox and Chevron did not sign it. It also claims that, when Cox continued to deliver its gas to the processing plant, it agreed to the terms of the Replacement Contract and Purchase Contract on a day-to-day basis.

Cox is likely to succeed on the merits of its breach of contract claim because it will likely succeed on its claim that the Bypass Agreement was accepted and remains effective until the expiration of the Transportation Agreement.

Because Cox is likely to succeed on the merits of its declaratory judgment and breach of contract claims, it has shown a substantial likelihood of success on the merits.

B. *Irreparable Harm.*

Cox must demonstrate that it would suffer imminent and irreparable harm with no adequate remedy at law and without a preliminary injunction.[5]

Cox says that it will be irreparably injured if the preliminary injunction

---

[4] *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

[5] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

-4-

does not extend until arbitration is completed because it would no longer be financially feasible to operate its wells under the Purchase Contract. It also claims that cancelling the preliminary injunction could result in terminated federal leases and shut-in wells.

DCP claims that Cox would earn a profit even if it had to pay for its gas processing services and that it is not in danger of shutting in its wells or surrendering its leases.

Without the preliminary injunction, DCP may charge Cox processing fees per its Purchase Agreement despite the existing issue of fact as to whether the Bypass Agreement remains effective. The federal leases depend on the profitability of the wells, and the profitability is impacted by the fees DCP may impose without the limits of the injunction. There is no harm to DCP if it continues to pay its 35% of proceeds under the Purchase Agreement into the court's registry. Cox has sufficiently shown it will suffer imminent and irreparable harm without a preliminary injunction.

C. *Public Interest.*

Cox's wells must remain operable amid rising energy costs. Although its antitrust and tortious interference claims are less meritorious than its breach of contract claim, the latter claim impacts national gas supply and, in turn, prices. It is in the public's interest that the preliminary injunction remains in effect.

4. *Injunction.*

Preserving the status quo when there is a dispute ensures that the prevailing parties' interests are protected to the greatest extent possible. The preliminary injunction will remain in place until the arbitration concludes.

Signed on July __15__, 2022, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge